UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
JUAN JOSÉ RODRIGUEZ and ROBERTO
COLON ORTIZ

                  Plaintiffs,

    -against-

METRO ELECTRICAL CONTRACTORS, INC.
and ISAAC [LAST NAME UNKNOWN],
RAFAEL [LAST NAME UNKNOWN], and
YOLY [LAST NAME UNKNOWN],

               Defendants.
-------------------------------X

**MEMORANDUM AND ORDER**

18-cv-05140 (KAM)

**MATSUMOTO, United States District Judge:**

         Plaintiffs Juan José Rodriguez and Roberto Colon Ortiz (collectively, "Plaintiffs") bring this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.,* the New York Labor Law ("NYLL"), § 1 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), Admin. Code of the City of N.Y. § 8-107 *et seq.*, against defendants Metro Electrical Contractors, Inc. ("Metro"), Isaac [Last Name Unknown] ("Gumbo") [1], Rafael [Last Name Unknown] ("Rafael"), and Yoly [Last Name Unknown]

---

[1] This Memorandum and Order will refer to this defendant as "Isaac Gumbo," as his last name was disclosed in Defendant Gumbo's Motion for Judgment on the Pleadings.  (*See generally* ECF No. 33, Motion for Judgment on the Pleadings.)

("Yoly").  Plaintiffs principally assert that they were discriminated and retaliated against because of their race and national origin, which created a hostile work environment, and led to their wrongful termination.  (*See* ECF No. 30, Amended Complaint ("Am. Compl.")  (*See Id.*)  Plaintiffs allege sixteen of the twenty causes of action against Gumbo.  (*Id.*)  Presently before this court is Gumbo's Motion for Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure 12(c) ("Rule 12(c)").  (ECF No. 33, Motion for Judgment on the Pleadings.)

For the reasons stated herein, Defendant's motion is granted in part and denied in part.

<u>**BACKGROUND**</u>

### I.  Facts

In reviewing the plaintiffs' motion for judgment on the pleadings, a court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiffs' favor.  *Kirkendall v. Halliburton*, 707 F.3d 173, 178 (2d Cir. 2013); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir.2011) (In reviewing the plaintiff's motion for judgment on the pleadings, "we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto.")  The following facts are taken

2

from the Amended Complaint and are assumed to be true for purposes of Defendant's motion for judgment on the pleadings.

Around February 2010, Metro hired Rodriguez as an electrician at the company's Brooklyn location, and around May 2015, Ortiz was hired by Metro as an electrician at the company's Brooklyn location.  (Am. Compl. ¶¶ 12 and 52.)  On January 4, 2016, Metro hired Yoly as a floor supervisor at the Brooklyn location.  (*Id.* ¶ 14.)  On Yoly's first day of work, he began calling employees names based off their respective racial or physical characteristics.  (*Id.* ¶¶ 15, 55.)  Yoly used discriminatory names such as "Gato" ("cat"), "Chihuahua," and "Esclavos" ("slaves") to refer to Latino employees.  (*Id.* ¶¶ 15-16, 21, 55-57.)  Specifically, Yoly began calling Rodriguez, "Boricua," a derogatory term used to refer to Puerto Ricans. (*Id.* ¶ 15.)  Yoly also told Ortiz that the Puerto Rican employees were his "esclavos" ("slaves").  (*Id.* ¶ 21.)

On or about January 15, 2016, Rodriguez complained to Yoly about the derogatory name calling and asked him to call him "Juan or José" because "[i]t was offensive to call [him] Boricua."  (*Id.* ¶ 17.)  Yoly told Rodriguez not to "worry about [the] name.  [To] [w]orry about doing [his] job."  (*Id.*)

On or about February 5, 2016, Yoly told Rafael, another floor supervisor, that he wished to replace Latino employees with "his people."  (*Id.* ¶ 18.)  Yoly also told Rafael

that he wished to "fire the Latinos." (*Id.* ¶ 59.) On or about February 10, 2016, Yoly forced Rodriguez, Ortiz, and other Latino workers, to work overtime and weekends without pay. (*Id.* ¶¶ 19 and 60.) Those who refused to work without pay would face termination, and, as a result, Rodriguez and Ortiz worked the unpaid time to avoid termination. (*Id.* at ¶¶ 20, 61.)

On or about February 17, 2016, Yoly threatened to fire plaintiffs and replace them with "faster [working] people" as there are "more Mexicans looking for a job." (*Id.* at ¶¶ 23 and 62.) Yoly told Ortiz that he would fire him and hire "the Mexicans" to work for "less money under-the-table." (*Id.* at ¶ 62.)

During their employment, Yoly continued to call Rodriguez "Bori" and "Boricua," despite Rodriguez asking Yoly to stop referring to him by derogatory names. (*Id.* at ¶ 25.) Yoly also continued to call Ortiz "Gato" ("cat") because he was a Latino with light-colored eyes, even though Ortiz asked Yoly to stop. (*Id.* at ¶¶ 58, 63.) Ortiz complained to Gumbo, the managing supervisor, about Yoly's name-calling and other discriminatory conduct. (*Id.* at ¶ 64.) Later that same month, Rafael, the floor supervisor, also began calling Latino employees "his Esclavos" ("my slaves") (*Id.* at ¶ 65.) Ortiz also noticed that Rafael indicated a preference towards hiring

4

younger, less experienced, non-Hispanic employees for higher rates of pay.  (*Id.*)

On or about September 20, 2016, Rodriguez was injured on the job after insulation fell into his eyes.  (*Id.* at ¶ 26.) Rodriguez suffered vision impairment and extreme pain due to this injury.  (*Id.*)  Doctors instructed Rodriguez to take one week off from work.  (*Id.* ¶ 27.)  Yoly refused to give Rodriguez a week off from work and ordered him to work or face termination.  (*Id.* at ¶¶ 28-29.)  Rodriguez returned to work and Yoly prevented Rodriguez from using accumulated FMLA or vacation time to recover after his injury.  (*Id.* at ¶¶ 29-30.)  On or about October 10, 2016, Rodriguez received the medical bill for the September 20, 2016 work injury and gave it to Rafael so that Metro could pay for the bill.  (*Id.* at ¶ 32.)  After several months of reminders, Metro refused to pay the medical bill. (*Id.* at ¶¶ 33-34.)

On or about October 15, 2016, Yoly's discriminatory treatment towards Plaintiffs increased.  (*Id.* at ¶¶ 35, 66.) Yoly continued to complain about Plaintiffs' work performance and forced them to work "even more overtime without pay."  (*Id.*) On or about July 23, 2017, Plaintiffs were instructed to work offsite under Yoly's supervision.  (*Id.* at ¶¶ 37, 67.) Plaintiffs were not paid for the work offsite despite their requests.  (*Id.* at ¶¶ 38, 68.)  On or about July 27, 2017, Yoly

5

requested for Plaintiffs to work overtime without pay.  (*Id.* at ¶¶ 40-41; 68-69.)  The Plaintiffs refused.  (*Id.*)  As a result, Yoly terminated the Plaintiffs.  (*Id.* at ¶¶ 41-42; 70.) Rodriguez told Yoly that he would file for unemployment to which Yoly responded, "you probably don't even have [documentation] papers to do that."  (*Id.* at ¶ 42.)

Based on the foregoing, Plaintiffs felt "humiliated, degraded, victimized, and emotionally distressed."  (*Id.* at ¶¶ 45, 71.)  Plaintiffs suffered and continue to suffer "loss of income, . . . salary, bonuses, benefits and other compensation." (*Id.* at ¶¶ 46, 72.)  Plaintiffs also continue to suffer from "severe emotional distress and physical distress."  (*Id.* at ¶¶ 47, 71.)

## II.  Procedural History

On September 12, 2018, Plaintiffs filed their first Complaint against Metro, Gumbo, Samuel Lebovitz ("Lebovitz"), Rafael, and Yoly.  (ECF No. 1, Complaint.)  On November 21, 2018, Defendants, Metro, Gumbo, Yoly, and Lebovitz filed a waiver of service.  (ECF No. 5-6, Waivers of Service.)[2]  On November 27, 2018, Defendants, Metro, Gumbo, and Lebovitz filed

---

[2] Notably, Defendant, Yoly, never filed an answer to the Complaint nor the Amended Complaint.  Separately, it is unclear from the docket if Defendant, Rafael, was ever properly served.  On December 13, 2018, plaintiffs' counsel filed a letter requesting an extension to effectuate service of process on Rafael.  (ECF No. 12, Letter Motion for Extension of Time.)  The letter explains that plaintiffs made several attempts to effectuate service on Rafael, but had been unsuccessful in personally serving the defendant.  (*Id.*)  The docket does not evidence whether proper service was ever effectuated.

their Answer.  (ECF No. 10, Answer to Complaint.)  On the same day, Defendants filed an Amended Answer.  (ECF No. 11, Amended Answer.)

After over a year of engaging in discovery and unsuccessful settlement negotiations, on February 18, 2020, counsel for Defendants, Metro, Gumbo, and Lebovitz, submitted a letter to this court requesting a pre-motion conference.  (ECF No. 28, Letter Requesting a Pre-Motion Conference.)  The letter noted that the complaint was "devoid of a factual basis for imposing liability against Gumbo."  (*Id.*)  On February 21, 2020 Plaintiffs responded requesting that Defendants' request for a pre-motion conference and accompanying request to file a motion to dismiss be denied.  (ECF No. 29, Letter in Response to Defendant's Request.)  In their letter, Plaintiffs asserted they had made specific allegations against Gumbo in Paragraph 65 of the Complaint[3], but did not address the complaint's lack of facts against Lebovitz.  (*Id.*)  The court ordered Plaintiffs to amend their Complaint in the absence of any allegations against Lebovitz in their original Complaint.  (Minute Entry and Order, 3/4/2020.)  On March 25, 2020, Plaintiffs filed an Amended Complaint, removing Lebovitz. (ECF No. 30, Amended Complaint

---

[3] Plaintiffs' letter incorrectly cites to Paragraph 65 in the Amended Complaint.  The reference to Gumbo is made at Paragraph 64 in the Amended Complaint.  (Am. Compl. ¶ 64.)

("Am. Compl.").)   The defendants did not file an answer to the amended complaint.

On May 8, 2020, Gumbo filed a motion for judgment on the pleadings pursuant to Rule 12(c) and an accompanying affidavit by Gumbo.  (ECF No. 33, Motion for Judgment on the Pleadings; ECF No. 33-1, Affidavit in Support.)  The other defendants have not joined in Gumbo's motion, nor filed a separate motion for judgment on the pleadings.  On June 5, 2020, Plaintiffs filed their Memorandum of Law and Affirmation in Opposition to Gumbo's motion for judgment on the pleadings. (ECF No. 33-4.)  On June 18, 2020, Gumbo filed a Reply Memorandum in Support of his motion.  (ECF No. 33-5.)  The only pleading before the court for consideration of Defendant Gumbo's motion for judgment on the pleadings is the Amended Complaint.

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  At the pleading stage of the proceeding, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at

679).  The court need not accept as true allegations that are effectively legal conclusions.  *See Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(c) motion, the court applies the "same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)."  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (*quoting Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).  In doing so, the court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party."  *Kousnsky v. Amazon.com, Inc.*, 631 F. App'x 22, 23 (2d Cir. 2015) (quoting *Johnson*, 569 F.3d at 44).  In order to survive a 12(c) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Kousnsky*, 631 F. App'x at 23 (quoting *Johnson*, 569 F.3d at 44).  The court need not assess the probability of the allegations in the complaint.  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  Instead, the court need only ascertain whether the complaint "'calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal'" conduct.  *Lynch*, 952 F.3d at 75 (quoting *Iqbal*, 556 U.S. at 678).  As such, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."  *Lynch*, 952 F.3d at 75.

Plaintiffs are entitled to judgment on the pleadings only if they have established "that no material issue of fact remains to be resolved and that [they are] entitled to judgment as a matter of law."  5 C. Wright & A. Miller, Federal Practice and Procedure § 1368, at 690 (1969); *see also MacDonald v. Du Maurier*, 144 F.2d 696, 700-01 (2d Cir. 1944) (stating that plaintiff's allegations must be accepted despite the answer's denial of their veracity); *see also Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 269 (2d Cir. 1990).

Pursuant to Federal Rule of Civil Procedure 12(d) ("Rule 12(d)"), if a motion under Rule 12(c) "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  This Rule is applied to both 12(b)(6) and 12(c) motions.  "Rule 12(d), therefore, presents district courts with only two options: (1) the court may exclude additional material and decide the motion on the complaint alone or (2) it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material."  *Palin v. New York Times Co.*, 940 F.3d 804, 810-11 (2d Cir. 2019) (quoting *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991).

## DISCUSSION

Plaintiffs allege sixteen of the twenty causes of action against Gumbo under various federal statutes, and state and city law.  The court will address each of the causes of action in order as they appear in Plaintiffs' Amended Complaint. However, before addressing the facts and causes of action raised in the Amended Complaint, the court will address the facts presented in Gumbo's Affidavit. (ECF No. 33-1, Affidavit in Support.)  Gumbo's affidavit states that he has no recollection of being told by plaintiffs about Yoly's discriminatory comments and acts.  (*Id.*)  Defendant Gumbo also states that he does not speak any Spanish and has heard that Ortiz only speaks Spanish, making it impossible for Ortiz to have effectively communicated with Gumbo.  (*Id.*)

In response, plaintiffs state that Ortiz does speak English, as he has been communicating with counsel during the litigation in English, and, the allegations raised by Gumbo are outside of the pleadings and "thus improper to consider on a motion for judgment on the pleadings."  (ECF No. 33-4, Plaintiffs' Opposition at 2-3.)  The court agrees with the plaintiffs that it may not properly consider Gumbo's affidavit in deciding Gumbo's 12(c) motion.  Here, defendant's affidavit is outside of the pleadings, and as such, the court will rule on

Gumbo's 12(c) motion solely based on the facts presented in plaintiffs' amended complaint.

## I.   Plaintiffs' Third Cause of Action under 42 U.S.C. § 1981

A claim of employment discrimination in violation of 42 U.S.C. § 1981, requires "[t]he same elements . . . as constitute a claim under Title VII." *White v. Eastman Kodak Co.*, 368 F. App'x (2d Ci. 2010).  To establish a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) defendants' intention to discriminate on the basis of race; and (3) the discrimination concerned one of the activities enumerated in the statute, such as the right to enforce a contract, sue and be sued, give evidence, etc. . . ." *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470 (S.D.N.Y. 2013) (citing *Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir. 2000)).

Additionally, Section 1981 encompasses retaliation claims in employment, *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008), which are analyzed under the same standard as a Title VII retaliation claim. *Villavicencio v. Gure-Perez*, 56 F. Supp. 3d 178, 186 (E.D.N.Y. 2014) (citing *Little v. N.E. Util. Serv. Co.*, 299 F. App'x 50, 52 (2d Cir. 2008)).  To state a retaliation claim, a plaintiff must demonstrate (1) that he engaged in protected activity, (2) of which the employer was aware, and (3) that he suffered a materially adverse action,

which (4) was causally connected to the protected activity.
*See, e.g., id.* at 186-87 (quoting *Kelly v. Howard I. Shapiro &
Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir.
2013)).  Here, plaintiffs allege both discrimination and
retaliation claims in violation of plaintiffs' Section 1981
rights.  (Compl. ¶¶ 87-94.)

Unlike claims under Title VII, § 1981 claims
"provide[] for individual liability on the part of non-
employers.  *Gad-Todros v. Bessemer Venture Partners*, 326 F.
Supp. 2d 417, 425 (E.D.N.Y. 2004).  In order to make out a claim
for individual liability under § 1981, plaintiff must
demonstrate an "affirmative link to causally connect the actor
with the discriminatory action" and personal liability "'must be
predicated on the actor's personal involvement.'"  *Patterson v.
County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) (*quoting
Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75
(2d Cir. 1995)).  "Personal involvement, within the meaning of
this concept, includes not only direct participation in the
alleged violation but also gross negligence in the supervision
of subordinates who committed the wrongful acts and failure to
take action upon receiving information that constitutional
violations are occurring."  *Patterson*, 375 F.3d at 229.

Here, Plaintiffs allege that Gumbo was the Plaintiffs'
managing supervisor at Metro's Brooklyn location.  (Am. Compl. ¶

13

9.)  Plaintiffs' only allegation against Gumbo is that Ortiz had "complained to Defendants' Managing Supervisor Isaac [Gumbo] about Defendant's Floor Supervisor Yoly's racial misconduct" in February of 2016.  (*Id.* ¶ 64.)  Ortiz told Gumbo that Yoly consistently calling him "esclavo" ("slave") and that he indicated that he did not wish to work under Yoly's supervision. (*Id.*)  Plaintiffs allege that by failing to act in response to these complaints, Gumbo "acted with malice or reckless indifference to the rights of [] Hispanic males."  (Am. Compl. ¶ 93.)

In *Gad-Todros v. Bessemer Venture Partners*, the court found the plaintiff's allegations against the individual, non-employer defendants to be sufficient under § 1981.  *Gad-Todros*, 326 F. Supp. at 425.  There, the plaintiff had complained to the individual defendants about discriminatory conduct and the individual defendants failed to remedy or prevent such conduct. *Id.*  Similarly, here, Plaintiffs allege that Gumbo, as managing supervisor, failed to remedy or prevent the Yoly's discriminatory conduct.  (Am. Compl. ¶¶ 9, 87-93;) *See also Zaidi v. Amerada Hess Corp., 723 F. Supp*. 2d 506, 517 (E.D.N.Y. 2010)(plaintiff's Section 1981 claim survived a motion to dismiss where the complaint [to the supervisor] made explicit reference to discrimination based on plaintiff's race.)

14

Plaintiff's discrimination claim under Section 1981 therefore survives.

Plaintiffs' retaliation claim under Section 1981 also survives because "an internal complaint of discrimination to management is a protected activity for purposes of a retaliation claim under Title VII." *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2nd Cir.1992). Retaliation claims brought under Section 1981 are analyzed under the same standards as Title VII. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2nd Cir.2000). Here, Ortiz brought an internal complaint of race discrimination to Gumbo, a supervisor. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. at 514–15, 122 S.Ct. 992 (2002) (At this stage of the case, the plaintiff is only required to give fair notice of the retaliation claim and the grounds upon which it rests, in order to defeat the present motion.)  As such, defendant's motion for judgment on the pleadings with respect to plaintiffs' Section 1981 discrimination and retaliation claims against Gumbo is denied.

## II. Plaintiff Rodriguez's Sixth and Seventh Causes of Action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601

The FMLA was enacted by Congress in 1993 "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to

promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1). In order to bring a successful claim under the FMLA, an employee-plaintiff must demonstrate "(1) that the employer interfered with, restrained, or denied the rights protected by the FMLA, and (2) that the employee has been prejudiced by the violation." *Roberts v. Health Ass'n,* 308 F. App'x. 568, 569 (2d Cir. 2009) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

"The FMLA entitles covered employees to take up to 12 weeks of leave per year to care for a spouse, parent, or child that has a serious health condition, or for the employee's own serious health condition that makes the employee unable to perform the functions of his or her position." *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 193 (S.D.N.Y. 2011) (citing 29 U.S.C. §§ 2612(a)(1)(C), (a)(1)(D), (b)). Upon return from FMLA leave, an employer must restore an employee to her former job or another position with equivalent pay, benefits, and conditions of employment. 29 U.S.C. § 2614(a)(1). An employer who fails to provide an eligible employee with FMLA leave may be held liable for damages and may also be required to reemploy, reinstate, or promote the employee. *See* 29 U.S.C. § 2617(a)(1). Additionally, an individual can face personal liability under the FMLA under certain circumstances. Personal liability under the FMLA is appropriate only if the individual defendant is an

"employer" within the definition of the statute.  *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016).  The term "employer" in this context can include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(ii)(I); *see also* 29 C.F.R. § 825.104(d).  The Second Circuit applies an "economic reality" test to evaluate whether an individual qualifies as an "employer" for purposes of FMLA liability.  *Graziadio*, 817 F.3d at 422.  A non-exhaustive list of factors for whether an individual qualifies as an employer includes:

> whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Id.*  "However, '[t]he economic reality test is a factual inquiry that does not bear on the sufficiency of pleadings.'  Thus, to survive a motion to dismiss, Plaintiff need not allege sufficient facts to satisfy the economic reality test; instead, he must simply 'plead that the proposed [I]ndividual [D]efendants had substantial control over the aspects of employment alleged to have been violated.'"  *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 475-76 (S.D.N.Y. 2011) (citing *Augustine v. AXA Fin., Inc.*, No. 07-CV-8362, 2008 WL 5025017, at *3 (S.D.N.Y. Nov. 24, 2008).)

Here, Rodriguez does not allege *any* facts to support the notion that Gumbo had "substantial control" over the alleged FMLA violation and therefore, Gumbo's motion for judgment on the pleadings based on these claims is granted. *See Noia v. Orthopedic Assocs. of Long Island*, 93 F. Supp. 3d 13, 17 (E.D.N.Y. 2015) ("Plaintiff fails to allege direct involvement by Dr. Puopolo in the alleged FMLA violation . . . [t]his is fatal to the Plaintiff's proposed FMLA claim against Dr. Puopolo.")  The *only* allegation made against Gumbo is in reference to the complaint made by plaintiff regarding Yoly's discriminatory conduct and comments.  (Am. Compl. ¶ 64.)  Even further, the complaints made to Gumbo were made by Ortiz, not Rodriguez, and only Rodriguez alleges an FMLA violation.  (*Id.*)  Plaintiffs allege that Gumbo is a "managing supervisor," (*Id.* ¶ 9),  but do not plead facts which would support Gumbo's ability to hire and fire employees, supervise the plaintiffs' work schedules, exhibit control over the plaintiffs' work schedules, or maintain the plaintiffs' employment records.  Accordingly, Defendant Gumbo's motion as to Rodriguez's FLMA claim is granted.

### III. Plaintiffs' Eighth, Ninth, Tenth, Eleventh, and Twelfth Causes of Action under New York Labor Law ("NYLL")

New York Labor Law ("NYLL") governs a wide range of labor disputes and "prohibit[s] the employment of a person in

certain work or under certain conditions [and] the employer
shall not permit such person to so work, with or without
compensation, and in a prosecution or action therefor[e] lack of
consent by the employer shall be no defense."  N.Y. Lab. Law §
3(McKinney 2021).  Plaintiffs allege violations of various
sections of the NYLL concerning overtime wages, spread of hours,
notice and recordkeeping requirements, and failure to pay wages.
(Am. Compl. ¶¶ 112-130.)  Once again, the only allegation made
by Plaintiffs against Gumbo is about the complaints made to him
regarding name-calling and other discriminatory conduct
exhibited by Yoly.  (Am. Compl. ¶ 64.)  Plaintiffs fail to
allege any specific facts indicating Plaintiff Gumbo is at all
responsible for any of the alleged NYLL violations and that he
had control over plaintiffs' work schedules and pay.  As such,
defendant Gumbo's motion for judgment on the pleadings based on
the NYLL claims in the eighth, ninth, tenth, eleventh, and
twelfth causes of action is granted.

### IV.  Plaintiffs' Thirteenth, Fourteenth, and Fifteenth Causes of Action under New York State Human Rights Law ("NYSHRL")

Plaintiffs' thirteenth, fourteenth, and fifteenth
causes of action allege violations of the NYSHRL codified at
N.Y. Exec. Law § 296 *et seq*.  Plaintiffs allege violations of §§
296(1)(a), 296(6), and 296(7).  Section 296 makes it unlawful
for an employer to discriminate on the basis of an "individual's

19

age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence." N.Y. Exec. Law § 296(1)(a). Under § 296(6), it is "unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article." N.Y. Exec. Law § 296. Specifically, a plaintiff may proceed against an individual defendant under the direct liability provision of NYSHRL, § 296(1)(a), if the defendant either, first, has an ownership interest in the employer or, second, has the power to hire and fire the plaintiff. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995); *see also Russo–Lubrano v. Brooklyn Fed. Sav. Bank*, No. 06-CV-0672, 2007 WL 121431, at *8 (E.D.N.Y. Jan. 12, 2007); *see also Messer v. Fahnestock & Co. Inc.*, No. 103CV-04989-ENV-JMA, 2008 WL 4934608, at *9 (E.D.N.Y. Nov. 18, 2008). As a third option, a defendant who "actually participates in the conduct giving rise to a discrimination claim" may be found liable under NYSHRL's aiding and abetting section, § 296(6). *Tomka*, 66 F.3d at 1317; *see also Feingold*, 366 F.3d at 157–58 & n. 19*. See also Parra v. City of White Plains*, 48 F. Supp. 3d 542, 555 ("[a] supervisor's failure to take adequate remedial measures" in response to a complaint of discrimination has been deemed "actual participation" under

NYSHRL § 296(6).") (quoting *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 3d 376, 381 (S.D.N.Y. 1999).)

Gumbo contends that he "has neither an ownership interest, nor the capacity to determine personnel decisions," therefore, he cannot be liable under Section 296(1). This court agrees. The amended complaint does not allege that Gumbo possessed any ownership interest in Metro, nor does it allege that Gumbo had the power to hire and fire the plaintiffs. The amended complaint alleges only that Gumbo was plaintiffs' supervisor and that Ortiz complained to Gumbo about Yoly's name-calling and discriminatory conduct. (Am. Compl. ¶¶ 9, 64.) Hence, Defendant's motion for judgment on the pleadings as to this claim is granted.

By contrast, plaintiffs' aiding and abetting claim under Section 296(6) claim may proceed. Defendant contends that "one offhand comment of, at best, a questionable chance of being understood, without one further statement or one reminder, simply does not constitute sufficient notice to hold Isaac liable." Defendant cites to *Sloss-Sheffield Steel & Iron Co. v. Foote*, 231 Ala. 275, 276, 164 So. 379, 379 (1935) to support this contention. First, this case from the Supreme Court of Alabama and is inapplicable to, and not controlling in the case at hand as the plaintiffs bring a New York State law claim.

Second, failure to investigate as a supervisor can constitute "active participation" to support an "aiding and abetting" claim.  *See Feingold v. New York*, 366 F.3d 138, 157–158 (2d Cir.2004) (summary judgment denied on § 296 claims where defendants took no action to remedy such behavior of which they were aware); *Gallo v. Wonderly Co., Inc*., 2014 WL 36628, *8 (N.D.N.Y.2014) (a person may be liable under § 296 for taking no action to remedy discriminatory behavior); *Lewis v. Triborough Bridge and Tunnel Auth*., 77 F.Supp.2d 376, 384 (S.D.N.Y.1999) ("the case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under HRL § 296(6)") *accord Cid v. ASA Institute of Business & Computer Technology, Inc*., 2013 WL 1193056, *6 (E.D.N.Y.2013) (failure to investigate complaints of discrimination provides sufficient basis for aiding and abetting liability under New York City Human Rights law) (citations omitted); *cf. Morgan v. NYS Atty. Gen.'s Office*, 2013 WL 491525, *13 (S.D.N.Y. 2013) (recognizing that the failure to investigate could constitute aiding and abetting liability, but finding this plaintiff failed to allege that he ever brought the discriminatory conduct to his superiors).  Here, Gumbo was plaintiffs' supervisor and was aware of Yoly's discriminatory statements and conduct.  Gumbo did nothing to investigate Yoly's

22

conduct and, in turn, "aided and abetted" the discriminatory conduct.

Separately, plaintiffs' State retaliation claim under § 296(7) may proceed.  Section 296(7) provides that it is "unlawful discriminatory practice for any person engaged in any activity to . . . retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.  N.Y. Exec. Law § 296(7).  To state a claim for retaliation under § 296(7), a plaintiff must establish that "(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." *Delisi v. Nat'l Ass'n of Prof'l Women, Inc.*, 48 F. Supp. 3d 492, 495 (E.D.N.Y. 2014) (citing *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312, 786 N.Y.S.2d 382, 819 N.E.2d 998 (2004)).  This Court has already ruled that the Plaintiff successfully stated a claim for retaliation based, *inter alia*, on race and ethnicity pursuant to § 1981. As the Plaintiff's retaliation claim based on the NYSHRL also includes race-based workplace retaliation, the Court finds that the Plaintiff has successfully alleged such a claim.  *See Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 228

(E.D.N.Y. 2018) (holding that the plaintiff's NYSHRL § 296(7) retaliation claim survived a motion to dismiss since the Court had already determined that the plaintiff's retaliation claim under § 1981 had merit.)

Accordingly, for the reasons stated above, Defendant Gumbo's motion for judgment on the pleadings as to NYHRL Section 296(1)(a) is granted.  Defendant's motion for judgment on the pleadings as to NYHRL Sections 296(6) and 296(7) against plaintiffs is denied.

**B. Plaintiffs' Sixteenth, Seventeenth, Eighteenth, Nineteenth, and Twentieth Causes of Action under the New York City Human Rights Law ("NYCHRL")**

The NYHRL and NYCHRL make it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this [provision], or to attempt to do so." N.Y. Exec. Law § 296(6); Admin. Code N.Y.C. § 8-107(6).  The NYCHRL permits claims against individual defendants: "Individual[][defendants] can be found liable under both the NYHRL and the NYCHRL for aiding and abetting conduct that violates the law." *Brown v. Montefiore Med. Ctr.*, No. 18-cv-03861, 2019 U.S. Dist. LEXIS 78915, at *36-37 (S.D.N.Y. 2019). Furthermore, New York State courts have recognized that the "New York City Human Rights Law was intended to be more protective than the state and federal counterpart." *Farrugia v. N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724 (N.Y. Sup. Ct. 2006).

24

As Plaintiffs' NYHRL claim under Sections 296(6) and 296(7) have survived for the reasons listed above, Plaintiffs' NYCHRL claims also survive.  Under the more lenient NYCHRL standard and analyzing Plaintiffs' allegations in the light most favorable to Plaintiffs, there are sufficient allegations to state a claim under NYCHRL.

## CONCULSION

For the foregoing reasons, Defendant Gumbo's motion is DENIED with respect to Plaintiff's race-based Section 1981 claims, NYSHRL Sections 296(6) and 296(7) claims, and the NYCHRL claims.  Defendant Gumbo's motion is GRANTED with respect to the FMLA claims, the NYLL claims, and the NYSHRL 296(1) claim. To summarize, plaintiffs' Claims 3, 14, 15, 16, 17, 18, 19, and 20 remain as to defendant Gumbo.  The other defendants have failed to answer the Amended Complaint and must do so within (1) week of this Memorandum and Order by **March 12, 2021,** or face default. Separately, plaintiffs are ordered to submit proof of service as to defendant Rafael by **March 12, 2021.  SO ORDERED.**

Dated:   March 5, 2021
         Brooklyn, New York

                                          /s/
                                          _____
                                          Kiyo A. Matsumoto
                                          United States District Judge